**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KATE DOLAMORE,

      Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No.: 1:26-cv-06556

Judge Elaine E. Bucklo

Magistrate Judge Heather K. McShain

## DECLARATION OF KEITH A. VOGT

I, Keith A. Vogt, declare as follows:

1.      I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff, Kate Dolamore ("Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2.      I understand that infringers use a variety of tactics to evade enforcement efforts.

3.      Upon information and belief, Defendants facilitate sales designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine or authorized products. The Defendant Internet Stores often include images and design elements that make it difficult for consumers to distinguish these stores from an authorized website.

4.      Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. Upon information and belief, Defendants regularly create new online marketplace accounts on

various platforms and/or websites using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive illegal operation and to avoid being shut down.

5. There are similarities among the Defendant Internet Stores. For example, many of the Defendant Internet Stores have similar layouts, even though different aliases may be used to register the respective internet stores. Also, unauthorized products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being related to one another, suggesting that the products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

6. Defendants typically operate multiple accounts behind layers of payment gateways so that they can continue operation despite any enforcement efforts to make them judgment proof. Upon information and belief, Defendants maintain offshore bank accounts and regularly move funds from their accounts to offshore bank accounts outside the jurisdiction of this Court.

7. For these reasons, in the absence of an ex parte Order, Defendants could and likely would modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from accounts in U.S.-based financial institutions, including PayPal accounts, to offshore accounts.

8. Past investigation and discovery of online marketplace accounts reveals that Defendants appear to have provided false physical address information to the online platforms in order to avoid full liability. For example, many of Defendants' names and physical addresses used to register the Defendant online marketplace accounts are incomplete, contain randomly typed letters, fail to include cities or states, or use privacy services that conceal this information. Identical contact information among multiple domain names and/or online marketplace accounts also

suggests that many of the aliases used to register the Defendant online marketplace accounts are used by the same individual or entity.

9. I have reviewed the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"), to which China is a signatory. The Hague Convention does not preclude service by email, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit email service.

10. Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." A true and correct copy of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters, and a list of signatory members, are collectively attached hereto as **Exhibit 1**.

11. I have researched whether the issuance of an order to serve process upon the Defendants by electronic mail pursuant to Fed. R. Civ. P. 4(f)(3) is contrary to or likely to offend the law of the People's Republic of China (the "PRC"). I located an English language version of the current Civil Procedure Law of the PRC, which was adopted on April 9, 1991. A true and correct copy of the Civil Procedure Law downloaded from Chinacourt.org, a website sponsored by the Supreme People's Court of the PRC, is attached hereto as **Exhibit 2**. Chapter VII, Section 2, of the Civil Procedure Law governs service of process. I am informed and believe that the law does not preclude the service of process by email and allows for alternate service of process in certain circumstances. For example, Article 84 of the law provides that, if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law, a document shall be served by public announcement, a method even less likely to reach a defendant than service by email.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2026.

/s/ Keith A. Vogt
Keith A. Vogt
*Counsel for Plaintiff*